IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GARY D. BEAN                         :

                                     :

        v.                           : Civil Action No. DKC 2004-2213

                                     :

UNITED PARCEL SERVICE                :

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination and retaliation case are (1) the motion of Defendant United Parcel Service ("UPS") for leave to amend its answer (paper no. 17) and (2) Defendant's motion for summary judgment (paper no. 23). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant the motion for summary judgment and deny as moot the motion to amend.

**I.   Background**

Plaintiff Gary D. Bean, an African-American male, worked for UPS from February 1997 until his termination on December 6, 2002, for "failure to follow instructions, unbusiness like [sic] conduct, insubordination, theft of time, and [his] overall work record," according to the termination letter signed by his division manager, Terry Hall. Paper no. 29, ex. B. On June 15,

2004, he filed the instant complaint in the Circuit Court for Prince George's County. Paper no. 2. In it, Plaintiff alleges race and gender discrimination (Count I) and retaliation (Count II) in violation of the Maryland Fair Employment Practices Act, Art. 49B § 16(a)(1)-(2) and § 16(f),[1] respectively; parallel federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (Count III, discrimination) and § 2000e-3(a) (Count IV, retaliation); and violation of his "statutorily protected right to be considered for promotions" in violation of 42 U.S.C. § 1981 (Count V) insofar as "he was not given the opportunity to compete for a full-time supervisory position."

Plaintiff's termination, the injury for which relief is sought in counts I-IV of his complaint, was the culmination of events of December 6, 2002, some of the facts of which are in dispute. Both parties agree on at least the following: As Plaintiff was entering Defendant's facility in Landover, Maryland to begin his work shift at approximately 2:00 AM, another employee, Dan Meade, was leaving. Meade, a supervisor, was carrying several frozen turkeys. It is the practice of Defendant to give each employee one holiday turkey, but because the refrigerated trailer containing the turkeys remains at the

---

[1] Plaintiff does not refer to section 16(f) in his complaint, but it is the only section of Article 49B providing a cause of action for retaliation.

facility only for a couple of days, it is customary for supervisors to take turkeys home for their employees who are absent during those days and then distribute those turkeys to the absent employees upon their return to work. Plaintiff, suspecting that Meade was stealing turkeys, reported what he saw to a supervisor, and was told that Meade was probably taking extra turkeys for his employees and that he should return to work. Plaintiff, however, told several other employees of his suspicion,[2] despite multiple orders from supervisors not to discuss it further and to continue working. At approximately 7:00 AM, Plaintiff was terminated.

As to count V, the following is undisputed. From April 1999 through April 2001, Plaintiff supervised the damaged materials processing ("DMP") area of the "Preload" (i.e., sorting and loading) operation at the facility. In August 2001, without notifying Plaintiff of the opening, Defendant hired Jaison Grassel, a Caucasian male with only a few weeks' experience at UPS, for the position of permanent supervisor of the DMP area. Mr. Grassel had filed a "letter of interest" as required by UPS's promotion procedure, but Plaintiff had not.

---

[2] Plaintiff contends that, other than in discussions with supervisors, he repeated his suspicion to those employees who asked him but did not offer his thoughts to anyone else unsolicited. The distinction is irrelevant for the purposes of this opinion.

3

Defendant moves for summary judgment (paper no. 23) and for leave to file an amended answer (paper no. 17).

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the

party opposing the motion.  *See U.S. v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

**III. Motion for Summary Judgment**

**A.   Race and Gender Discrimination**

In Counts I and III, Plaintiff alleges race and gender discrimination in violation of, respectively, the Maryland Fair Employment Practices Act, Art. 49B § 16(a)(1)-(2)[3] and 42 U.S.C. § 2000e-2(a).   Plaintiff says he "was subjected to discriminatory employment practices when he was subjected to disparate treatment based on his race and gender and terminated when he reported theft by an employee" and "because Defendant UPS allowed a female employee to conduct other business during working hours and did not terminate her."   Compl. at ¶¶ 21, 36.

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).   For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the

---

[3] While in most of Maryland, a plaintiff cannot sue for employment discrimination under Article 49B, section 42 provides a private cause of action in Montgomery, Prince George's, and Howard counties.   Art. 49B § 42(a); *see, e.g., Willey v. Ward,* 197 F.Supp.2d 384 (D.Md. 2002) (plaintiff in Calvert County has no private cause of action) (citing *Dillon v. Great Atlantic & Pacific Tea Co.,* 403 A.2d 406, 409 (Md.Ct.Spec.App. 1979)).

issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (internal quotation omitted). More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (internal quotation omitted).

If, as here, such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981)).  If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

While Defendant construes Plaintiff's complaint as a discriminatory discharge claim, it is more properly understood as a claim for discrimination in the enforcement of employee disciplinary measures.  To establish a *prima facie* case for such a claim under either Art. 49B § 16 or § 2000e-2(a), Plaintiff must show that (1) he is a member of a protected class; (2) the prohibited conduct in which he was engaged was comparable in seriousness to the misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against him were more severe than those enforced against those other

8

employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (citing *Moore v. City of Charlotte,* 754 F.2d 1100 (4th Cir.), *cert denied,* 472 U.S. 1021 (1985)) (federal law); *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.,* 818 A.2d 259, 277 (Md.Ct.Spec.App. 2003) (Maryland law). Plaintiff is plainly a member of a protected class, and Plaintiff cites examples of Caucasian male and African-American female employees who, he claims, were disciplined less severely than he was for similar conduct. Defendant, however, argues that Plaintiff's conduct on December 6, 2002 was not comparable to the misconduct of those employees cited by Plaintiff. The court therefore examines each comparator.

Under familiar standards, the court compares

discipline for comparable offenses, instead of strictly identical offenses, "reflect[ing] an understanding both of the need to compare only discipline imposed for like offenses in sorting out claims of disparate discipline under Title VII and of the reality that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook,* 988 F.2d at 511. Accordingly, "this mandate sets for lower federal courts the difficult, but not unfamiliar, task of assessing the gravity of offenses on a relative scale." *Moore,* 754 F.2d at 1107.

*Manning v. Foodarama, Inc.,* 195 F.Supp.2d 741, 744 (D.Md. 2002).

Courts have also noted that in the Title VII context, "isolated incidents or random comparisons demonstrating disparities in

treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the entire relevant group of employees." *Strag v. Board of Trustees,* 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnic Inst.,* 10 F.3d 204, 206-07 (4th Cir. 1993)).

Plaintiff's strongest candidate for comparator is Mike Zoglio. Zoglio was terminated from UPS twice, but each time he was reinstated and his discharge reduced to a suspension. He was terminated on September 23, 2002, after having "walked off the job." Paper no. 29, ex. B, at 6 (first termination notice). That termination was reduced to a six day suspension after Zoglio acknowledged his misconduct, apologized, and promised that, if given another chance, he would not abandon his post again. *Id.* ex. B, at 7 (suspension notice); paper no. 24, ex. 18 (Affidavit of Jim Harris), at ¶ 23. Zoglio was terminated again on December 10, 2002, for failing to follow the instructions of his supervisor. Paper no. 29, ex. B, at 8 (second termination notice). That termination was reduced to a three day suspension, *id.* ex. B, at 9 (second suspension notice), for reasons not explained to the court by either party or by the evidence.

The circumstances of Zoglio's termination for abandoning his post, apology, and subsequent reinstatement are simply too dissimilar from Plaintiff's termination to be usefully comparable.  Walking off the job is a qualitatively different offense than the form of insubordination in which Plaintiff engaged.   Furthermore, Zoglio's apology meaningfully distinguishes his incident from Plaintiff's.   Jim Harris testified in his affidavit, and Plaintiff does not dispute, that acknowledgment of and apology for misconduct is sometimes persuasive when managers consider whether to reinstate a discharged employee.  Affidavit of Jim Harris at ¶ 20.  Plaintiff asserts that he was given no opportunity to apologize for his behavior, but in fact, throughout the entire grievance procedure, Plaintiff never acknowledged that he engaged in misconduct and was inappropriately insubordinate to management on the day he was terminated.  Paper no. 24, ex. 1 (Deposition of Plaintiff), at 217-18 (Question: "And during the course of that local level hearing, you never admitted that you had done anything wrong, did you?"  Plaintiff's Answer: "No, sir.");  Affidavit of Jim Harris at ¶ 19.  Even in his deposition in this case, he continued to assert that he had the right to speak his mind after multiple supervisors told him to stop talking about the incident.  Deposition of Plaintiff at 189 ("I still feel

that I had the right to talk about something that's not abusive, not sexually explicit or endangerment [sic]. I think I have the right to talk about it as long as I'm not hurting anyone."). Zoglio's first termination is therefore insufficiently comparable to Plaintiff's termination to satisfy Plaintiff's *prima facie* burden.

The court simply cannot evaluate Zoglio's second termination because there is no information as to the nature and circumstances of Zoglio's offense and any behavior occurring subsequent to his termination that may have led to his reinstatement. It is Plaintiff's burden, on Defendant's motion for summary judgment, to show that he can establish each element of his *prima facie* case. *See McDonnell Douglas,* 411 U.S. at 802; *see, e.g., Manning,* 195 F.Supp.2d at 744-45 ("Ms. Manning indeed has failed to set forth a *prima facie* case because she does not demonstrate that her misconduct is comparable to instances of misconduct of employees outside the protected class. . . . The evidence submitted by Ms. Manning . . . is insufficient to allow a reasoned conclusion that the . . . instances are comparable."). Here, Plaintiff has not done so; all the court knows is that Zoglio was disciplined for failure to follow instructions. Without more details, the court has no way of knowing whether Zoglio's infraction was comparable to

12

Plaintiff's.   Zoglio's second termination is therefore also
insufficient as evidence for Plaintiff's *prima facie* case.

None of the conduct of the other employees cited by
Plaintiff is sufficiently comparable to Plaintiff's
insubordination to warrant the withholding of summary judgment.
Plaintiff alleges that Terry Hall and Mike Farrell should have
been disciplined for loud and abusive or profane language, and,
in Hall's case, for "throwing objects on the workroom floor,"
and that Jaison Grassel was not disciplined despite presenting
at work hung over and sleeping on the job.   None of these
incidents is comparable to the defiant behavior in which
Plaintiff admittedly engaged by discussing with multiple
employees, after being told not to do so repeatedly, his
suspicion that a supervisor engaged in theft.   Moreover, Hall is
a division manager, and Farrell and Grassel supervisors; as
such, the standards for their conduct and discipline are
qualitatively different than for those of Plaintiff, a part-time
employee whose employment is governed by a collective bargaining
agreement.   These comparators are therefore insufficient as
well.

Plaintiff's other alleged comparators are, at best, poorly
researched.   Plaintiff alleges that Bennetta "Curley" Reid was
not disciplined for "stealing time from the Company" when she

sold snacks during work hours, but neglects to mention that Reid sought and received authorization from Defendant to do so as a fundraiser for United Way.  Affidavit of Jim Harris at ¶ 28. Plaintiff states in his complaint that Donna Riddle was not disciplined for unsatisfactory attendance, but does not dispute Defendant's evidence that Riddle was, in fact, terminated because of her attendance record; that she was reinstated when she persuaded Defendant that she had resolved the issues underlying her poor attendance record; and that she was terminated again when her attendance remained poor and is no longer a UPS employee.  *See id.* at ¶ 26.

Because Plaintiff cannot establish that he was disciplined more severely than comparably situated employees outside his protected class, the court will grant summary judgment on counts I and III.

**B.  Retaliation**

In counts II and IV of his complaint, Plaintiff claims he was terminated in retaliation for having filed multiple race discrimination grievances against Defendant and various of its employees, in violation of Maryland and federal law.  Under both § 2000e-3(a) and Art. 49B § 16(f), to establish a *prima facie* case of retaliation, Plaintiff must show that (1) he engaged in a protected activity, (2) Defendant took an adverse employment

14

action against him, and (3) there is a causal connection between the protected activity and the adverse employment action. *King v. Rumsfeld,* 328 F.3d 145, 150-51 (4th Cir. 2003) (federal law); *Martin Marietta Corp. v. Md. Comm'n on Human Relations,* 38 F.3d 1392, 1402 (4th Cir. 1994) (Maryland law); *see Chappell v. S. Md. Hosp., Inc.,* 578 A.2d 766, 773 (Md. 1990) ("As [Art. 49B § 16(f)] tracks the language of § 2000e-3(a), we think it likely that these same criteria would determine whether a *prima facie* violation of the state law was established."). Here, Plaintiff engaged in a protected activity by filing grievances, and Defendant terminated him. At issue is whether Plaintiff can establish a causal connection between the two. The court finds that he cannot.

"[T]he employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie* case." *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir. 1998). It is well established that a relevant decisionmaker must have knowledge of the protected activity to show intentional discrimination. *See id.* (because "the relevant decisionmaker [who terminated plaintiff] . . . was unaware that [plaintiff] had ever filed a complaint with the EEOC . . . [plaintiff] cannot establish the

15

necessary causal connection between her filing a complaint with the EEOC and her termination.") (citing cases); *Featherson v. Montgomery County Pub. Sch.,* 739 F.Supp. 1021, 1025-26 (D.Md. 1990) (no retaliation claim where there was "absolutely no evidence that the persons involved in any of the alleged adverse decisions . . . knew at the time that the decisions were made that plaintiff had filed any EEO claims") (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 n.9 (4th Cir. 1985), *abrogated on other grounds, Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) ("if the employer did not know of the protected activity a causal connection to the adverse action cannot be established")); *Kimes v. Lab. Corp. of Am.,* 313 F.Supp.2d 555, 566 (M.D.N.C. 2004) (no retaliation claim where "Plaintiff has . . . failed to demonstrate that any of her supervisors knew of her EEO complaint when they decided to reprimand and later fire her.") (citing *Dowe*). Here, Plaintiff has not shown that the manager who fired him, Jim Harris, knew of his prior complaints of discrimination. Harris, who did not become Plaintiff's manager until September of 2002, testified that he was unaware of any of Plaintiff's prior complaints of discrimination. Affidavit of Jim Harris at ¶¶ 7-8.

In response, Plaintiff asserts that he filed a discrimination complaint "as late as September 2002," paper no.

16

28, at 32, but no evidence of any such complaint has been submitted to the court.   One complaint submitted by Plaintiff is dated Sept. 16, 2002, but that complaint is merely a report of another employee's behavior, and does not allege discrimination. *See* paper no. 29, ex. B, at 140-42.   The only discrimination grievance prior to his termination before the court is dated March 4, 2002, *see id.* at 143-45,[4] long before Harris took over as Plaintiff's manager.   Plaintiff also asserts baldly that Harris was aware of his prior complaints, but presents no evidence to so suggest.   That mere assertion is not sufficient to withstand summary judgment. *See Detrick*, 108 F.3d at 536.

Plaintiff also asserts in his response that Terry Hall, not Jim Harris, was responsible for his termination, apparently relying on the fact that Hall's signature, not Harris's, appears on the official termination notice Plaintiff received six days after he was discharged.   Paper no. 29, ex. B, at 0.   That letter, however, is merely a form letter; the evidence is undisputed that it was Harris alone who made the decision to discharge Plaintiff and to inform him of that fact on the night of December 6, 2002. *See* Affidavit of Jim Harris at ¶ 15;

---

[4] Plaintiff also filed at least one other grievance that, despite Plaintiff's assertion, paper no. 28 at 33, does not appear to implicate race discrimination. *See* paper no. 29, ex. B, at 146-48 (grievance of Aug. 6, 2001).

Deposition of Plaintiff at 213-14, 216.  Plaintiff's retaliation complaint is thus fatally flawed.  *See Dowe,* 145 F.3d at 657. Accordingly, the court will grant summary judgment as to counts II and IV.

**C.   Failure To Promote**

In count V of the complaint, Plaintiff contends that, in violation of 42 U.S.C. § 1981, he "was not given the opportunity to compete for a full-time supervisory position" but that a Caucasian employee, Jaison Grassel, was given that opportunity and received the promotion despite being less qualified than Plaintiff.  The court finds no merit in this claim.  Plaintiff admits that he did not submit the requisite "letter of interest" and that he was aware that such a letter was a prerequisite to promotion.  Deposition of Plaintiff at 234.

Plaintiff argues in response that his failure to submit a letter of interest does not bar his claim because "[t]he Fourth Circuit has a long history of cases where the court has found discriminatory informal or secretive promotion practices," and compares his situation to that of the plaintiff in *Williams v. Giant Food, Inc.,* 370 F.3d 423 (4th Cir. 2004).  The defendant employer in *Williams* also utilized a self-nomination application process for promotions to management, in that employees who wished to be promoted for a particular position were required to

18

apply for the job. *Id.* at 425. The court reversed the district court's grant of summary judgment for the defendant, finding genuine issues of fact as to whether the employer had made the employee aware of promotion opportunities for which she would have applied. *Id.* at 435. In *Williams*, however, "operation of the company's self-nomination procedure depended upon employees' being made aware of promotion opportunities: Only an employee who knew about an upcoming promotion selection could avail herself of the self-nomination procedure." *Id.* at 431. At UPS, by contrast, job openings for supervisor positions are not posted or advertised; instead, when a position is available, a qualified candidate is selected from *all* those in the candidate pool who have completed a self-nomination process, the first step of which is submission of the letter of interest. *See* Affidavit of Jim Harris at ¶ 6 & ex. A. *Williams* is therefore inapposite.

Plaintiff alleges without substantiation that Grassel, who was promoted after only three weeks on the job, was likely "promoted through word of mouth." Paper no. 28, at 31. Plaintiff did not comply with the promotion requirements, of which he was admittedly aware. Thus, he cannot claim that his rights were violated when a less experienced but compliant

applicant was promoted.   Accordingly, the court will grant summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted.   Accordingly, Defendant's motion to amend its answer to add an additional defense not relevant to this opinion will be denied as moot.   A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

August 18, 2005

20